LUBIN & ENOCH, P.C.
Nicholas J. Enoch, State Bar No. 016473
Margot Veranes, State Bar No. 037194
Taylor M. Secemski, State Bar No. 035678
349 North Fourth Avenue
Phoenix, Arizona 85003-1505
Telephone: (602) 234-0008
Facsimile: (602) 626-3586
Email: nick@lubinandenoch.com
       margot@lubinandenoch.com
       taylor@lubinandenoch.com

AWERKAMP, BONILLA & GILES, P.C.
Ivelisse Bonilla, State Bar No. 023594
Shannon Giles, State Bar No. 018786
6891 North Oracle Road, Ste. 155
Tucson, Arizona 85701-4287
Telephone: 520-798-5282
Facsimile: 520-798-5283
Email: ib@abdilaw.com
       sg@abdilaw.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Amir Kiani a/k/a Amir Monshizadeh, a single man; Chelsea Campbell, a married woman; and a class of all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>ADP, Inc.,<br><br>    Defendants. | Case No. 4:23-cv-00508-BGM<br><br>**PLAINTIFFS' FIRST AMENDED COLLECTIVE ACTION COMPLAINT** |

Plaintiffs Amir Kiani[1] ("Kiani") and Chelsea Campbell ("Campbell"), by and through their attorneys at Lubin & Enoch, P.C., bring this collective action pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA").

## **INTRODUCTION**

1. Plaintiffs are former employees of Defendant, ADP, Inc. (hereinafter "ADP").

2. Plaintiffs allege that ADP has willfully contravened their right to overtime compensation due to them and to others similarly situated in accordance with the FLSA, 29 U.S.C. § 207.

3. Plaintiff Kiani additionally alleges that ADP retaliated against him in violation of the FLSA.

## **PARTIES**

4. During all relevant time periods, Plaintiffs resided in Pima County, Arizona.

5. At all relevant times, Plaintiffs were "employees" of ADP as the term is defined by 29 U.S.C. § 203(e)(1).

6. Pursuant to 29 U.S.C. § 216(b), Plaintiffs seek to represent all other similarly situated employees who work, or have worked, for ADP's Tucson, Arizona office, located at 5451 E. Williams Boulevard, Tucson, Arizona 85711, since September 22, 2020 as

---

[1] Amir Monshizadeh legally changed his name to Amir Kiani while employed at ADP, Inc.

2

1 District Managers ("DMs"), Senior District Managers ("SDMs"), and Elite District Managers ("EDMs"), and who have not been paid the requisite overtime compensation.

7. Plaintiffs request that they be permitted to serve as representatives of those who will later consent to participation in this action, and that this action be granted collective action status pursuant to 29 U.S.C. § 216(b). Plaintiffs' consent forms are attached hereto as Exhibits A and B.

8. Plaintiffs presently believe and allege that the class includes approximately 365 separate individuals who have, since September 22, 2020, worked for ADP as District Managers (approximately 200 individuals), Senior District Managers (approximately 150 individuals), and Elite District Managers (approximately ten to fifteen individuals). Accordingly, joinder of all class members would be impracticable.

9. The claims asserted herein on behalf of Plaintiffs and the class present questions of law and fact common to the class, in particular, whether ADP has failed to pay the requisite overtime compensation to their employees.

10. Plaintiffs' overtime claim is typical of the claims of the class.

11. Plaintiffs, as representative parties, will fairly and adequately protect the interests of the class.

12. The prosecution of separate lawsuits by individual members of the class would not only be judicially inefficient, but it would also create a risk of inconsistent or varying adjudication with respect to individual members of the class, which would establish incompatible standards of conduct for Defendant.

1  13. ADP is a foreign corporation engaged in the sale and provision of financial
2  management software for businesses, including payroll software. It has an office at 5451
3  East Williams Blvd, Tucson, Arizona 85711. Its headquarters are located at One ADP
4  Drive, MS Corp 003, Augusta, Georgia 30909.
5  14. Defendant is not exempt from compliance with the FLSA.
6  15. ADP is an "employer" as that term is defined in 29 U.S.C. § 203(d).
7  16. At all relevant times, Stephen Buskirk, an ADP Sales Executive, acted in the
8  interest of ADP in relation to its employees. 29 U.S.C. § 203(d). Among other things, he
9  exercised managerial control over the Plaintiffs, including but not limited to: setting
10 companywide policy, assigning or controlling work duties and sales quotas, determining
11 the rate and method of Plaintiffs' compensation, and maintaining any employment records
12 that exist.
13 17. At all relevant times, Taylor Anderson, an ADP Divisional Vice President,
14 acted in the interest of ADP in relation to its employees. 29 U.S.C. § 203(d). Among other
15 things, he exercised managerial control over the Plaintiffs, including but not limited to:
16 setting companywide policy, assigning or controlling work duties and sales quotas,
17 determining the rate and method of Plaintiffs' compensation, and maintaining any
18 employment records that exist.
19 18. At all relevant times, Robert Friedberg, ADP's Vice President of Sales, acted
20 in the interest of ADP in relation to its employees. 29 U.S.C. § 203(d). Among other things,
21 he exercised managerial control over the Plaintiffs, including but not limited to: setting
22 companywide policy, assigning or controlling work duties and sales quotas, determining

1  the rate and method of Plaintiffs' compensation, and maintaining any employment records
2  that exist.

3      19.    At all relevant times, Shelley Coons, an ADP Vice President of Sales, acted
4  in the interest of ADP in relation to its employees. 29 U.S.C. § 203(d). Among other things,
5  she exercised managerial control over the Plaintiffs, including but not limited to: setting
6  companywide policy, assigning or controlling work duties and sales quotas, determining
7  the rate and method of Plaintiffs' compensation, and maintaining any employment records
8  that exist.

9      20.    At all relevant times, LaDonna Pine, an ADP Sales Executive, acted in the
10 interest of ADP in relation to its employees. 29 U.S.C. § 203(d). Among other things, she
11 exercised managerial control over the Plaintiffs, including but not limited to: setting
12 companywide policy, assigning or controlling work duties and sales quotas, determining
13 the rate and method of Plaintiffs' compensation, and maintaining any employment records
14 that exist.

15     21.    At all relevant times, Paul Haley, an ADP Sales Executive, acted in the
16 interest of ADP in relation to its employees. 29 U.S.C. § 203(d). Among other things, he
17 exercised managerial control over the Plaintiffs, including but not limited to: setting
18 companywide policy, assigning or controlling work duties and sales quotas, determining
19 the rate and method of Plaintiffs' compensation, and maintaining any employment records
20 that exist.

21     22.    At all relevant times, Sonya Everett, ADP's Director of Associates, acted in
22 the interest of ADP in relation to its employees. 29 U.S.C. § 203(d). Among other things,

1  she exercised managerial control over the Plaintiffs, including but not limited to: setting
2  companywide policy, assigning or controlling work duties and sales quotas, determining
3  the rate and method of Plaintiffs' compensation, and maintaining any employment records
4  that exist.

5      23.    At all relevant times, Tim Click, an ADP Global Security Operations, acted
6  in the interest of ADP in relation to its employees. 29 U.S.C. § 203(d). Among other things,
7  he exercised managerial control over the Plaintiffs, including but not limited to: setting
8  companywide policy, assigning or controlling work duties and sales quotas, determining
9  the rate and method of Plaintiffs' compensation, and maintaining any employment records
10 that exist.

11     24.    At all relevant times, Leah Bynum, an ADP Vice President of Sales, acted in
12 the interest of ADP in relation to its employees. 29 U.S.C. § 203(d). Among other things,
13 she exercised managerial control over the Plaintiffs, including but not limited to: setting
14 companywide policy, assigning or controlling work duties and sales quotas, determining
15 the rate and method of Plaintiffs' compensation, and maintaining any employment records
16 that exist.

17     25.    At all relevant times, CJ Wienhoff, an ADP Sales Executive, acted in the
18 interest of ADP in relation to its employees. 29 U.S.C. § 203(d). Among other things, he
19 exercised managerial control over the Plaintiffs, including but not limited to: setting
20 companywide policy, assigning or controlling work duties and sales quotas, determining
21 the rate and method of Plaintiffs' compensation, and maintaining any employment records
22 that exist.

26. At all relevant times, Veronica Menjivar ("Menjivar"), an ADP Sales Executive, and in this capacity acted in the interest of ADP in relation to its employees. 29 U.S.C. § 203(d). Among other things, she exercised managerial control over the Plaintiffs, including but not limited to: setting companywide policy, assigning or controlling work duties and sales quotas, determining the rate and method of Plaintiffs' compensation, and maintaining any employment records that exist.

27. At all relevant times, ADP has been an employer subject to the FLSA because it has at least two employees and, upon information and belief, it has a gross annual volume of sales or business of not less than $500,000.

28. While employed by ADP, Plaintiffs were "engaged in commerce" as defined in the FLSA and corresponding regulations. 29 U.S.C. § 203(b).

## JURISDICTION AND VENUE

29. This Court has original subject-matter jurisdiction over this complaint pursuant to 28 U.S.C. § 1331and 29 U.S.C. § 216(b).

30. Venue is proper in this Court because all events or omissions giving rise to the claims occurred in the District of Arizona, and because ADP maintains an office in Pima county. 28 U.S.C. § 1391(b)(2).

## GENERAL ALLEGATIONS

31. ADP employed Kiani from approximately July 9, 2018 until March 14, 2023.

32. During his employment, Kiani first worked as a District Manager ("DM"), and later transitioned into the role of Senior District Manager ("SDM"), then Elite District Manager ("EDM").

33. As a DM, Kiani's duties included, but were not limited to, making and receiving phone calls, text messages, and emails from current and prospective clients, securing software sales contracts with clients, and meeting the required sales quota.

34. As a SDM, Kiani's duties included, but were not limited to, the duties described in ¶ 34 above, along with an increased sales quota.

35. As an EDM, Kiani's duties included, but were not limited to, the duties described in ¶ 35 above, along with an increased sales quota, and informally supporting and training District Managers.

36. ADP employed Campbell first as a DM, then a SDM, and finally an EDM. She was employed by ADP from approximately January 20, 2016 until July 27, 2022.

37. Campbell's responsibilities were the same as Kiani's, described *supra* at ¶¶ 33-35.

38. Other DMs, SDMs, and EDMs at ADP had, and continue to have, similar responsibilities to those described *supra* at ¶¶ 33-35.

39. Kiani, Campbell, and all similarly situated managers' primary duty was securing software sales contracts with prospective clients and maintaining contracts with current clients. They worked from ADP's Tucson office.

40. Despite their job title as "manager," Plaintiffs and similarly situated individuals did not manage any department of ADP nor have the power to hire, fire, or supervise other employees.

41. Plaintiffs and other Managers at ADP kept track of the hours they worked through ADP's mobile app, where they could clock in and clock out from any location.

42.    ADP generally scheduled Plaintiffs and other Managers at ADP to work a set schedule from 8:00 a.m. to 5:00 p.m. five (5) days per week, Monday to Friday, with a one (1) hour unpaid lunch break.

43.    Plaintiffs and those similarly situated were paid on an hourly basis, plus commissions and other incentive payments.

44.    Plaintiffs and other similarly situated employees consistently worked over forty (40) hours per week.

45.    Plaintiffs and other similarly situated employees were not paid any additional amount of compensation for the hours they worked over forty (40) hours per week.

46.    Sales Executives, including those supervising Plaintiffs—Haley, Menjivar, Buskirk, Weinhoff—and the Vice-Presidents of Sales, including Friedberg, Coons, and Bynum, informed DMs, SDMs, and EDMs that they were required to clock out once per day for lunch and to clock out once they had worked forty (40) hours in a workweek.

47.    Plaintiffs and those similarly situated were pressured not to clock in during overtime hours worked before their scheduled start time, after their scheduled end time, over lunch, or on the weekend.

48.    Sales Executives told DMs, SDMs and EDMs that they needed to be available to communicate with clients, which, in practice, meant to respond to clients anytime and anywhere. It was understood that this meant regular business hours in other time zones and after or before regular business hours. Managers that did not do this would not make their sales quotas which often resulted in termination.

49. The Sales Executives permitted and expected Plaintiffs and other Managers at ADP to work beyond their set schedules in order to meet their sales quotas.

50. ADP placed employees on a "performance plan" if they were not on track to fulfill the yearly sales quota for three (3) months in a row. A performance plan could lead to termination of employment.

51. ADP set yearly sales quotas for Plaintiffs and other Managers at ADP, which increased as their rank within the company grew.

52. ADP imposed yearly sales quotes on its Managers, which were individually tailored to the individual based on tenure and role type and increased each year.

53. As DM, Kiani had a yearly sales quota of $195,000. As a SDM the following year, Kiani's yearly sales quota was $256,000. As an EDM, his yearly sales quota started at $449,000 and was raised to $675,000 in his second year as EDM. In his final year, due to segmentation of his team into a smaller market focusing on companies with 6-24 employees, his quota was lowered to approximately $550,000 per year.

54. As DM, Campbell had a yearly sales quota of $265,000. As SDM, Campbell had a yearly sales quota of $500,000. As an EDM, her sales quota increased from $700,000 per year to $800,000 per year and finally $805,000.

55. One "deal" with a business owner typically garnered between $2,000 and $5,000 towards the yearly sales quota.

56. ADP encouraged its employees to use a policy of "speed to lead," meaning that the quicker an employee responds to business owners, the more quickly they could secure the sale.

57. Employees of ADP were responsible for communicating with clients and prospects ("business owners") across three (3) time zones. Business owners would frequently contact ADP employees by way of phone calls, text messages, and emails outside of scheduled working hours: prior to 8:00am and after 5:00 pm on weekdays, during lunch breaks, and on weekends.

58. Due to the nature of Plaintiffs' work, quick responses to business owners' inquiries were necessary in order to secure sales and meet the sales quota. Sales leads could be manually reassigned to other managers if a manager did not immediately contact the lead. Thus, Plaintiffs frequently worked outside of scheduled hours, including while clocked out during lunch, and on weekends without compensation.

59. Sales executives told Plaintiffs and other managers that they could take a lead at lunch time but to make sure they still clocked out for lunch because they need to stay under forty hours.

60. In addition to encouraging DMs, SDMs, and EDMs to clock out at forty (40) hours, ADP had a policy and practice of time editing or removing overtime hours from employees' timesheets.

61. Both Sales Executives and Executive Assistants, including Candace Ballesteros, reviewed and edited time cards to remove overtime hours of DMs, SDMs, and EDMs in the Tucson office.

62. Agents of ADP were generally aware when their employees worked outside of their set schedules. Even if an employee was not clocked in, for example, their supervisors would automatically receive notification when an employee created an invoice

for a new customer. ADP supervisors were also cc'd on emails sent over the weekend, and ADP supervisors could and did monitor computer use.

63. Agents of ADP admitted that their practices were unlawful. On one occasion, Kiani raised his concerns about the company's timekeeping practices to his supervisor, Stephen Buskirk. Buskirk responded that he did not have a problem with Kiani clocking in past 40 hours if he was working the hours and that he understood and agreed with Kiani's point but that "this is what I am being told I need to have you guys do."

64. On another occasion, Stephen Buskirk agreed Kiani should be paid overtime but he did not have the power to allow it.

65. Kiani's exchange with Buskirk led to Kiani's team-wide email to the Tucson DMs, SMs and EDMs and Coons in 2019.

66. In October 2019, Kiani protested that ADP's overtime policy was unlawful via an email communication to his colleagues and immediate supervisor. Coons, a Vice President of Sales, called him in response and arranged a meeting with Kiani's business unit team to discuss expectations at a later time. Thereafter, Kiani's timecards were auto-approved and not manually reviewed each pay period, resulting in payment of overtime hours he clocked in.

67. Kiani clocked in if he was working between Monday and Friday, and regularly worked more than forty hours. However, he did not clock in over the weekend even though he regularly worked five hours each weekend in January and February and two to three hours each weekend over the rest of the year.

68. Campbell's supervisor, Veronica Menjivar, told her to stop recording her time after 45 hours each week because she was limited to ten hours of overtime per pay period. She was encouraged to keep working but not to record the time.

69. Campbell estimates that she is owed approximately ten hours of overtime on average per week because she was told to clock out after fifty hours but continued to work. This includes lunchtime, evening hours or early morning hours, and weekends.

70. In 2023, Kiani learned that his colleagues who worked under the supervision of LaDonna Pine were told to clock out after forty hours despite working more than forty hours, and as a consequence, were not paid overtime. He also learned Pine was manually adjusting time cards to remove overtime.

71. Kiani reported this practice to Robert Friedberg, Vice President of Sales.

72. Kiani was subsequently called into a meeting regarding his use of overtime. ADP supervisors told him that it appeared, from computer logs, that he was working on weekends without clocking in, and that he was not clocking out during lunch.

73. Kiani admitted that he had worked on weekends without clocking in, because he had been told not to record that time.

74. Kiani admitted that he had not clocked out during lunch on those occasions when he worked through lunch.

75. Kiani was then terminated for not clocking out for a lunch break, despite the fact that he worked through lunch, because of a purported company policy requiring employees to clock out for lunch.

76. Kiani believes he was terminated because he truthfully reported his weekday working hours on his timecard, and because he spoke out about ADP supervisor's policy to pressure employees to not report overtime.

## CLAIMS FOR RELIEF
### Count I:
### Violation of the Fair Labor Standards Act's Overtime Compensation Provisions, 29 U.S.C. § 207(a) *et seq.*

77. Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

78. The FLSA prohibits employers from employing their employees for a workweek longer than forty (40) hours unless the employee receives compensation at not less than one and one-half times the regular rate at which he or she is employed. 29 U.S.C. § 207(a).

79. At all relevant times, Plaintiffs were employees who were engaged in commerce as required by 29 U.S.C. § 207.

80. At all relevant times, ADP was Plaintiff's employer within the meaning of the FLSA, 29 U.S.C. §§ 203(d) and 215(a)(3).

81. Defendants has violated 29 U.S.C. §§ 207 and 215(a)(2) by employing Plaintiffs, and others similarly situated, in an enterprise engaged in commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such non-exempt employees for all of the hours they worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates for which they were employed.

82. Moreover, Defendant knowingly, willfully, and with reckless disregard carried out their illegal pattern of failing to pay Plaintiffs the proper amount of overtime compensation.

83. Defendant is a sophisticated party and employer, and therefore knew—or should have known—that their pay policies violated the FLSA.

84. The decisions and practices by Defendant to not pay the proper amount of overtime for all hours worked was neither reasonable nor in good faith.

85. Accordingly, Plaintiffs, and others similarly situated, are entitled to be paid overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees, and costs.

86. Because ADP's violation of the FLSA has been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

**Count II:**
**Violation of the Fair Labor Standards Act's Retaliation Provisions,**
**29 U.S.C. § 215(a)(3)** *et seq.*

87. Plaintiff Kiani realleges and incorporates by reference the foregoing paragraphs as if fully set forth herein.

88. To establish a prima facie case of retaliation, a plaintiff must show: (a) defendants were aware of the plaintiff's participation in a protected activity; (b) that an adverse employment action was taken against the plaintiff; and (c) that the protected activity was a substantially motivating factor in the adverse employment action as to that plaintiff. *Lambert V. Ackerly*, 180 F.3d 997, 1002-03, 1008 (9th Cir. 1999). If a plaintiff

1   succeeds in meeting her burden, the burden shifts to the Employer to demonstrate a
2   legitimate, non-retaliatory reason for the adverse employment action. *Stegall v. Citadel*
3   *Broad. Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003) (applying McDonnell Douglas burden-
4   shifting framework to FLSA).

   89.   In 2019, Kiani emailed his colleagues, carbon-copying his supervisors, reminding them of their right to be paid for all hours worked.

   90.   Shelly Coons then called him, and he told her he was not being paid for overtime hours worked. After that conversation, his timesheets were auto-approved, allowing payment of overtime hours he clocked in. However, he continued to not clock-in over the weekend, despite working between two to ten hours on the weekend, depending on the season.

   91.   In March of 2023, Kiani reported to Robert Friedberg, VP of Sales, that many of his colleagues were being told to clock out after forty hours, even though they continued to work. Kiani also reported to Friedberg about the time editing practices.

   92.   Kiani was called into two meetings with management, where management asked why their computer records showed he had worked on weekends but he had not clocked in. He explained that he had been told not to report his hours worked on the weekend.

   93.   During this meeting, Kiani told ADP that he had not clocked out during lunches because he had worked through lunch.

16

94. Sonya Everett and Tim Click interviewed Kiani for approximately two and a half hours regarding his hours worked and ideas on how ADP could cut unpaid hours, including making hourly employees salaried, among other things.

95. Click told Kiani that "either way this goes, [Kiani] would be a poster boy for this issue."

96. At the end of the second meeting, Kiani was terminated for allegedly breaking the time card policy which required ADP employees to clock out once per day for lunch.

97. Kiani applied for unemployment, which ADP challenged.

98. After an investigation, DES determined that Kiani that rule for which Kiani was terminated "was not reasonable or uniformly enforced." Kiani was awarded unemployment benefits.

99. As a result of ADP's FLSA retaliation, Kiani is entitled to (a) reinstatement, (b) payments of wages lost, (c) recovery of an additional, equal amount as liquidated damages for ADP's willful violations of the FLSA, and (d) reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

100. ADP's conduct toward Kiani, as set forth within, *supra*, was egregious, malicious, done with an evil intent to punish him for asserting his rights under the FLSA, and was a retaliatory act in deliberate violation of the FLSA. As such, Plaintiff Kiani is entitled to an award of punitive damages. *See Lambert*, 180 F.3d at 1011; *Travis v. Gary Comm. Mental Health Ctr.*, 921 F.2d 108, 112 (7th Cir. 1990); *Campbell-Thomson v. Cox*

*Commc'ns*, No. CV-0801656-PHX-GMS, 2010 U.S. Dist. LEXIS 43977 at *32–33 (D. Ariz. May 5, 2010).

## PRAYER FOR RELIEF

Plaintiffs pray that they recover from Defendants the following:

A. An award of unpaid overtime wages in an amount appropriate to the proof adduced at trial pursuant to 29 U.S.C. § 216(b);

B. An award of liquidated damages regarding ¶ A, *supra*, in an amount appropriate to the proof adduced at trial pursuant to 29 U.S.C. § 216(b);

C. Attorneys' fees pursuant to 29 U.S.C. § 216(b);

D. Litigation costs pursuant to 29 U.S.C. § 216(b);

E. As to Plaintiff Kiani, an order requiring ADP to reinstate Plaintiff in his previous job on a full-time basis, and an order requiring ADP to pay Plaintiff an amount equal to his lost wages and liquidated damages in an amount equal to the lost wages, and an order requiring ADP to pay Plaintiff punitive damages pursuant to 29 U.S.C. § 216(b);

F. Such other legal and equitable relief, including punitive damages, as this Court deems just.

RESPECTFULLY SUBMITTED this 22nd day of November, 2023.

                                          LUBIN & ENOCH, P.C.
                                        AWERKAMP, BONILLA & GILES, P.C.

                    By:   /s/ Nicholas J. Enoch
                           Nicholas J. Enoch, Esq.
                           Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of November 2023, I electronically transmitted the attached Plaintiff's Filing First Amended Complaint to the Clerk's Office using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants, and by email to:

Joseph A. Kroeger (#026036)
Joshua R. Woodard (#015592)
Audrey E. Chastain (#033998)
SNELL & WILMER L.L.P.
One South Church Avenue, Suite 1500
Tucson, Arizona 85701-1630
Telephone: 520.882.1200
Facsimile: 520.884.1294
E-Mail: jkroeger@swlaw.com
           jwoodard@swlaw.com
           achastain@swlaw.com

*Attorneys for Defendant Automatic Data Processing, Inc.*

/s/ Sheri Estrada